Next case on our call this morning is case number 106680, Beelman Trucking v. Workers' Compensation Commission, et al. One moment, Mr. Glass. We'll just wait for people to settle down before you start. You may proceed, Counsel. Thank you. First of all, I apologize to the Court for having to reschedule oral arguments due to my eye surgeries, and appreciate your having accommodated that difficulty. Thank you for that. On behalf of the petitioner in the Workers' Comp case here, Jack Carson, I think given the reason that the majority of the appellate court reversed the decisions below as to the entitlement to compensation for more than two permanently injured body parts, as was suffered by my client, the beginning point today should be was the Arview case from 1953 that they relied on really as authoritative as they thought. And if not, why not? Sorry. Looking at the lengthy excerpt that was quoted from Arview in the majority opinion, the last part of it about employees who can't choose between different remedies doesn't seem to make much sense to anybody who's practiced Workers' Comp Law in Illinois for the last 30 years, because we do this all the time. There are many types of injuries that could arguably be compensated under one section of the Act or another, and we make the choice, disability or disfigurement, which is greater for that particular part, or permanent partial disability or wage differential, depending on the economics of a given injury. So that part doesn't make sense other than looking at what it meant back in 1953. At that time, let's say a claimant like Mr. Arview injured three body parts, but was very seriously, but was still able to go to work, so he's not permanently, totally disabled vocationally. If the three parts had enough medical evidence to justify individual awards of permanent partial disability, adding up to, similar to that case, 600 weeks of permanent partial disability, the maximum award that he would receive, despite that extent of injury, would be 416 weeks of compensation, because there was then a section 8H that said, other than permanent total disability, the maximum you can get from an accident is eight years or 416 weeks. So statutory permanent total disability under 8E18 that's an issue here, it's called permanent total disability, but it doesn't really work that way, because in any other context, the way we usually think of it, permanent total disability means the end of a career, no more earnings on account of the injury. But this part of the act specifies that if you have the blindness, amputation, or paralysis of a member of the two members to qualify for it, that's bad enough, even if you never miss a paycheck, and you're going to be entitled to the same compensation for the loss of those two parts as if you were occupationally totally disabled, by whatever that standard may be, which changes from time to time, and is defined in section 8F. So that's why those weeks would have been called permanent total disability compensation, even though they didn't act that way. So what they found objectionable at the time of our view was that to take two of those members, that it would have added up to the 600 weeks, and claim them under E18, where they would technically be weeks of permanent total disability compensation. They would therefore circumvent the cap that the legislature had put in place on permanent partial disability from a single accident. So at that time, the position of our view that was rejected looked like a pretense to circumvent legislative intent that was right there in the statute. Well, that cap on permanent partial disability was taken out of the act somewhere in the 1970s, and ever since then, there's never been any such cap on cumulative damage from an injury. It's not there. So the essence of why our view was decided the way it was may have been valid at the time for the way the act existed, but legislative intent to have a cap of that nature was not only a void of indication, but they took out the one they had, which is an even stronger indication that they didn't want the kind of cap that the appellate majority assumed existed. Does our view rely on that specifically? I think the language in your brief was it was influenced by it, and I don't know if that means they relied on that permanent partial disability cap. I don't know how clearly the expression was, but in the our view decision, they were reciting the number of weeks, 600 and something, and then there were other side issues about the weeks of temporary disability that don't really apply here, but they were clearly doing the math of how much compensation that our view could get under the law as it existed, which made the attempt to relabel some of those weeks from PPD to PTD look like, and I guess was an attempt to get around the cap of the statute that limited the options, but we don't have that anymore, so that analysis of our view doesn't apply. So that takes us to the next level of what is in Section 8E18, and that's one of many, obviously to get up to 18 there have to be other sections, and each section of each subsection of E is nothing more than for this particular body part, here's the amount of compensation you can get this number of weeks and a few other conditions that may apply to some of them, and E18 is just one of those lists. So nothing in any subsection of E18 mentions or refers to any other section. The only thing the Act has in several places in Section 8D and E is that for any specific injury to a particular identifiable part, you can't have a double recovery. Mr. Glass, isn't that duplicative under 8E10 for the left arm, duplicative of the award under the Section 8E18? Didn't the left arm injury result from the spinal injury and therefore a part of it? That would be a one medical interpretation as a factual matter that was not the conclusion the commission reached. The factual analysis on the medical was that the paralysis of both legs was from the accident and sufficient to satisfy 8E18 for that part of his compensation. Clearly the right arm amputation is separate, and the extent to which the left arm can be called a separate injury as opposed to a separate, as opposed to part of the same specific injury is, I don't think that that limit would be there. If you have a chemical burn where you're splashed in multiple places, you're still going to have disfigurement of the face and the hand and the arm from the same splash, the same trauma to the skin, and they should be individually assessed. And I think to say that if they only, even if medically the only lesion for three of the four was at the cervical spine that it affected three extremities, I don't think that the law requires ignoring the third. Did that? Yes, thank you. Okay. Is this matter at its core, counsel, a question for us of statutory interpretation of what total and permanent disability means in 8E18? I don't, no I think the statute, and as I get into the constitutional concerns, the statute reads just fine. It was an unreasonably narrow interpretation of what was implied by the statute where the appellate majority thought that just because it says once you have these two, you're entitled to the same compensation as somebody vocationally totaled out, that that ends the inquiry and the rest of your injuries are irrelevant as to compensation. So then for us, it should be a matter of giving difference to the commission and to their findings? On the factual part, which was in the last question, but as a legal matter, the way the statute reads, there is no limitation or preemption by one section over another other than a double recovery for a specific component of injury. And the commission didn't do that. There is a statement in one of the cases that if the legislature intended to allow more than permanent total disability compensation from a single accident, they needed to say it, and I think that's backwards. Because we start with a common law right to all recourse for all injuries that predated the compact, and that right was already there unless the legislature were to specifically limit it. At the time of our view, they made that choice, capping the number of weeks at a certain level. Once they took that out, then we're back to the right to recourse for all injuries sustained other than an expressed limitation. Did the one injury to the spine cause the loss of three members, both legs and the left arm? The, I'm not sure that the spinal injury was the lesion in the cervical spine may or may not have been the total reason for all of the disability to those three extremities apart from the amputation. There may have been other aspects of injury that, you know, we just didn't get that detailed yet. I don't know that the medical, whether that fully answers the question, I don't recall if there might have been other evidence of bone fractures or other damage to the shoulder on the left arm. If in fact, if it did, if the spinal injury did cause the loss of all three limbs, wouldn't the recovery for the left arm be double recovered? I don't believe so because it is in fact a totally different consequence than that which affects the legs. But that part I think is, as was alluded to before, getting into a factual conclusion for the commission as to on that. It's your argument that each separate injury should be considered on its own after you've made the permanent finding? Yes, because each is an identifiable injury to a part. Which two injuries were the basis of the finding of permanent disability? The statutory permanent total disability was based on the paralysis of his legs. And beyond that, so those two parts qualified for that degree of compensation without any regard to or limitation within the statute to separately look at the other injuries he also sustained. And then the arbitrator awarded permanent partial disability to each arm. The commission increased the number of weeks for one of the arms because of the degree of amputation entitling him to that higher figure. The one other point that the, I think, needs to be considered if the court is concerned with the appellate majority interpretation of section 18 and what it does or doesn't include or preclude, is to look at the constitutional point of the Illinois Bill of Rights section 12 that says, we shall have a certain remedy for all injuries to the person and property. And if the appellate majority is correct or allowed to prevail and impose this new limitation that isn't in the act, then they are taking away all recourse to some injuries for victims of very severe multiple trauma. But isn't the case law rather consistent that that clause doesn't provide for a constitutional right to the person? I didn't really see that that point had been raised very much. And I've got to say, I never even knew that was in the Illinois Constitution until the majority opinion hit my desk. I hadn't had any reason to look at it before. And doesn't that provision reflect the philosophy that people should have access to the courts? I think as it used to be worded and was worded at the time of our view when it was every person ought to have, and I think it was in two places as ought to, in the last constitutional convention, they ramped it up from ought to to shall. So to the extent that there's a language in an opinion that says it's a goal rather than a promise or a commitment, I think that overlooks the intensity of choosing the word shall. And even if it's a goal, it's a darn good one, and particularly in a case like this. We're all aware of all the public sentiment that's negative on personal injury claims of various sorts and amounts of award as an economic, social phenomenon. But even to the extent that that's a factor subject to legislative shifts, if there's anybody who shouldn't be caught up in that tide, it's the type of worker who sustains an injury that qualifies him for this part of the act. These are the ones who suffer the worst injuries of all. So even if you say that that part of the Bill of Rights is a goal rather than a guarantee, who better deserves the best effort to achieve that goal than someone suffering the type of injuries that Jack Carson did? I think there was a recent opinion in the court that I think put that in the right context of statutory interpretation. In Belleville, Toyota, where Justice Fitzgerald's statement, the judicial role in construing statutes is to ascertain legislative intent and give it effect to aid and accomplish this, a court will seek to determine the objective the legislature sought to accomplish and the evils it desired to remedy. Well, in creating a scheme of replacing common law rights to improve and reduce acrimony between employers and employees for workplace injuries, and in order to provide an adequate and fair and comprehensive analysis of these injuries and their effects and to compensate them appropriately, then the decision at the first three levels of this case carry out that purpose and should be affirmed. And as in the parts that were still there and reinstated as to the key question here. Thank you. Mr. Hendershot. Thank you, Your Honor. May it please the court, my name is Bob Hendershot. I represent the employer, Beelman Trucking. Counselor, I think what this case is really about is what the facts of this case are. This was a really tragic injury that caused this man to become quadriplegic as a result of a cervical burst fracture. I understand Mr. Glass's frustration that perhaps the Illinois legislative scheme, the Workers' Compensation Act, didn't fully compensate Mr. Carson for the extent of his injuries. But under a legislative scheme, the idea is that the legislature determines what is adequate compensation. And that has been upheld over the years that this is a correct use of police powers in the state. And the constitutionality of the Workers' Compensation Act in Illinois as well as all the other states were confirmed back in the 1920s. I'd like to address a couple of questions this court raised in the initial arguments. There was a question about our view and really is it still good law in this state? And my position is our view is still good law because Section 8E18, which is the statutory permanent total section, the language in that section has not changed. Other parts of the permanent partial statute have changed. All the court, this court was doing in our view in 1953 was merely going through what the other provisions of the permanent partial statute said at that time. But that was not determinative of how they interpret Section 8E18. Essentially 8E18 is a recognition by the legislature that in certain kinds of injuries, there's going to be a special kind of compensation available to this employee. And it's limited to complete lost use of hands, legs, arms, eyes, or a combination of the two. And once you reach that burden, then it's no longer a permanent partial case. It is then transferred into the area called permanent total. And Section 8E18 says that that employee then thereafter shall be compensated as if they were permanently disabled under Section 8F. The big difference between 8F, which is the standard vocational permanent total, can they still be employed in the open labor market, is that as an employer and insurance carrier, if they go back to work, we cannot terminate their benefits. The reason being is because the legislature has made this determination, as discussed by this court in our view, that this is a special kind of injury and we're going to create this special kind of benefit. And because of that, then we can't terminate benefits. And it's really compensating not only for what happened in that injury, but the pain and suffering that goes along with that is anticipated that may occur in future employment. This is a very unique part of the statute. And so hopefully that answers the question. In regards to whether the left arm injury came as a result of the cervical burst fracture, I agree with Mr. Glass. We didn't spend a lot of time, didn't depose doctors, because there really wasn't any question this man was totally disabled. There's no other explanation for why he could not use his left arm other than the cervical burst fracture. So I don't have any other explanation on that. There was a question about, concern about double recovery. And I think that dovetailed into the issue, well, if the cervical burst fracture caused the inability to use the left arm, and then we compensate the left arm in addition to the statutory permanent total, that would in fact be a double recovery. Now, Section 8E is what we call the statutory loss section. It outlines for the first 16 sections how much total disability is available for each body part. It's called the scheduled injuries. You'll see, I think, in the brief that was filed by the Illinois Travelers Association, attempt to argue that because Section 8E18 is in E, it should be treated as other Section E injuries. And I'm suggesting to you that's simply not the correct interpretation. If you go through the first 16 sections, like I said, you will see the definitions of how much is an eye worth, how much is a leg worth, how much is a finger worth. But in starting in Section 17, what the legislature has done is they start to explain how you apply the first 16 sections. 17 had to do with credits. 19 has something to do with survivability of benefits. And 8E18 specifically says if you have total loss of use of one of these special scheduled members, you're going to have to pay a fine of $100,000. That's the end of the discussion. This Court specifically addressed that issue in our view in 1953, and because that statutory section has not changed, I think that the appellate court in this case was correct in saying, yes, our view is still good law. Section 8E18 remains the same. The mechanism of how it works remains the same. And therefore, I think the appellate court was correct in their interpretation that once you get two injuries that qualify for 8E18, that's the end of the discussion. Because what our view, what this Court said in our view is that if you have some other interpretation, it would really in fact destroy the meaning, the plain meaning of Section 8E18. I believe also in the amicus brief there was some discussion about credits, and I think that's a misplaced argument, because really this is not a credit situation. If you reach this certain triggering mechanism, in other words, complete loss of a hand and a leg or two legs or whatever, that's the end of the discussion. It's not precluding these benefits. It's just a statutory mechanism. Now, Mr. Glass in his brief raises some issue in regards to whether this is denial of equal protection, due process, and the cases all say that the Court assumes constitutional grounds and places a pretty high burden to show that something is not constitutional. In one case they talked about where they denied, they did find that the provision was unconstitutional in regards to segregation. It kind of points how far you have to go to get there. In Section 29 of the Act, this was some time ago before this case, and I don't have the case in front of me right now. The Act made a distinction between what an employee could recover if the third party had workers' compensation insurance or not. And this Court said, well, why should this injured employee be treated differently depending on what some third party did in regards to their acceptance of the Workers' Compensation Act or not. And they said that was not a rational basis to make that distinction, and so they denied that. Here we very much have a rational basis. Legislature said this kind of injury we think entitles a person to a lifetime pension. And in addition thereto, permanent total disability is compensated differently than permanent partial disability. Not only on the lifetime benefit, but under the statute the permanent total rate is two-thirds of the average weekly wage instead of 60%, which is for permanent partial disability. They're entitled to, there's a rate adjustment fund in the Workers' Compensation Act, which permanent total, permanently totally disabled employees become entitled to. Essentially it's a COLA, cost of living adjustment that's available for them. So there are some additional benefits given to this type of employee. But the whole argument really comes down to, can you attack this legislative scheme because in this tragic case somebody feels that they weren't properly compensated? And case law in our view, in other cases, clearly say, no, you can't do that. Is this a question of statutory interpretation for us? Yes, I think it is. Because the question is, clearly he's entitled to permanent total disability benefits under Section 8018. The question then is, is he entitled to something more than that? And under the statutory legislative scheme, you're limited to the plain wording of the statute. There's nothing that gives him the right to those benefits. In fact, if you look at Section 80, it specifically states that you cannot get benefits under any other provision of the Act if you accept or you're entitled to this benefit. So, for example, if you had the total loss of use of the left arm, but you're also being compensated for permanent total disability as contemplated in Section 8F, that's precluded by Section 8E specifically. Now, you'll see some cases cited in Mr. Glass's brief that suggest that that preclusion has been modified somewhat. Those cases don't deal with Section 8E18. We have these statutory scheduled injuries, 1 through 16, Section 8E. Then we also have a separate section under 8D for what we call body as a whole injuries, which is the 500-week schedule, which is for all those other injuries that are not covered by the schedule, which are primarily trunk injuries, head, neck, chest, back, and so that's a different one. And what these cases say is that you can get compensated for a back injury under 8D and also get compensated for a right arm under 8E, and they don't conflict because you're compensating two different body parts and two different injuries. And so that's much different than going to Section 8E18 and saying, okay, well, we've got these two injuries, these two body parts injured, and there may be some others, but, and this Court said in our view, that's the end of the discussion. Then you just go into this permanent total disability. But, counsel, isn't that treating the two people differently? Isn't that the equal protection argument, then? Well, no, it's not, really, because, I mean, I think that's well within the equal protection. One can go to each specific and the other group can't, going back and forth. Well, and I don't think that's a denial of equal protection, because they are, in fact, getting remedies, but the legislature's made a determination, because this specific kind of injury, we want to give them something more than what they would normally get under the permanent partial schedule. And so, actually, I think it's... Counsel, of course, all that is needed for that remedy is two body parts. Right. Right. And this Court specifically... But my point is, you just said that the other body parts are part of the permanent injury. And statutorily, technically, I don't think they are, that's all I'm saying. I'm sorry, I didn't quite... Technically, I don't think that they are, because they're based upon two specific body parts, in this instance, the two legs. Right. And all the legislature has done is given a statutory mechanism that once you reach this threshold, then you kick into this lifetime pension under Section 8F, permanent total disability, that we cannot close. There's no specific statement, however, in the statute that recovery and additional injuries are available. Well, I think in Section 8E, it specifically says you can't recover under other sections. Now, what the courts have said is that you can't recover under separate sections for the same injury. You can't have double recovery. But permanent total disability is the complete total disability. The statute talks about complete total disability. The courts talk about complete total disability. You're now beyond the body parts. You're talking about the entire body, everything that's injured in that body. I did want to address, and you'll see this both in the Carson brief as well as the Amicus brief, this clause and other cases. Your counsel, you still go back to those different body parts. So if other body parts, if the legs were the ones that gave him total disability, you mean that he can't recover for the arms or an eye or anything else? Right. Once he qualifies for Section 8E18, for example, the two legs. But if somebody went in on the other section, they could go individually for the eye, the arm, the two, one leg, next leg, and whatever. They could if they don't qualify for 8E18. But as soon as you qualify for 8E18, that's the benefit that you're entitled to, and that's what this Court said in our view. And they were very specific about that. I wanted to address this concept of other cases. 8E18 says that this happens, we have the injuries, we have the compensation, and it shall not preclude other cases. And there's an attempt to say that other cases means that it shall not preclude other body parts. Well, that's not the plain meaning of other cases. In the practice of workers' compensation, an application for adjustment of claim is filed for the entire claim. One claim is accepted by the commission. It covers all the body parts, all the injuries, all the issues under one case. Now, Freeman is a different kind of case. Freeman tells us what the courts interpret the legislature to mean by other cases. It means in Freeman, it's statutory permanent total. He goes back to work for the same employer, has a new injury. The court says, yes, you can get new compensation for this injury, because at that point in time, the employees on the 8E18 is being compensated for the prior injury due to his pain and suffering. And the legislature specifically envisioned that somebody who cannot be terminated for permanent total disability benefits can go back to work, have a new injury, and statute says, and shall not preclude those cases from proceeding. And the court in Freeman said, yes, you're right, and I believe that's a correct application of the law. Other cases does not mean other body parts. There are no cases cited by Carson or, you know, a trial lawyers association to support their position on that. And I think if you look at the plain meaning and the definition of case, it's clear that that means the entire legal proceeding for that particular incident. I have one question with regard to that. I think your argument is kind of circular. You argue that one cannot be more than 100 percent disabled from a single accident, yet in another breath you argue that the language do not exclude means a worker who does return to work, and if further injured, can receive additional compensation. Yet if a person is considered 100 percent disabled under the one section, under the 18, returns to work, and then is injured again, how can he receive additional? I understand the question. And this court in Freeman, to a certain extent, addressed that question. Section 8E18 serves a dual purpose. First of all, it's compensating the employee for the injury that caused the disability, that qualified them for that benefit. They go back to work. They have this new injury. The second role of 8E18 is to compensate them for the pain and suffering as a result of the original injury. So there's a dual role of 8E18, and that's why there's a difference there. But the compensation for pain and suffering occurs at the same time the 100 percent disability is rendered. So this new injury, he gets no compensation, is that right? No, if he goes back to work and has a new injury, as court said in Freeman, you're entitled to additional compensation. And that's what Case Law says in the state, and who am I to question that? But that's how it works, and I was trying to work through that question in my mind, too, getting ready for this. And the explanation is, again, there's a dual purpose of 8E18. You're compensating for the prior injury, as you would in every other case. However, because you can't terminate the benefits and you can have the subsequent case, it does not exclude other cases. The second purpose is it's doing something more than any other benefit under the Act. It's also compensating them for this pain and suffering that's not recognized in any other benefit under the workers' compensation scheme. So under both scenarios, they can receive additional compensation for an injury? If they have a new separate accident. Yes. Even though they're 100 percent disabled? Right, because it's a statutory mechanism that you can't change. And the reasoning in my mind is it serves a dual purpose that you don't see in any other benefit. And I see my time is about up. There were two other issues, just briefly. The use of computer equipment or the purchase of computer equipment. What the appellate court did is just say, okay, well, is this medically necessary? I'm suggesting to this court that there ought to be a two-point standard on it. Is it medically necessary and is it something that this employee needs above and beyond what the general public needs? Because the testimony Mr. Carson gave in this case is he used his computer the same as you and I do. In other words, exchanging e-mails, checking the Internet, had nothing to do with anything other than what the rest of the general public uses. So I would suggest that we have to have an additional standard of not only medically necessary, but in fact that there's something additional need for this computer as opposed to the general public. In regards to the van rider insurance, there's no cases in Illinois on this. Missouri and Iowa have considered this and said, no, the van's in the control of the employee and that insurance should be the employee's responsibility. And I would just ask that you look at that and give us some guidance on that issue. Thank you. Thank you. On those latter two points about the computer and the insurance premium, I think those are adequately covered in the briefs. For clarification, there is a statement in E18 that it doesn't preclude other cases, and they're arguing that other cases means subsequent accident, which was already clearly acknowledged in the Freeman decision by this court in 84. And there's really two possibilities. That's all it means, in which case the section of the act is silent on injuries to other parts of the body beyond the two that qualify. So either way, either other cases means other entitlements from this injury that are still not preempted, or the act is silent, in which case our original position of the rights to recourse for every injured part were already there until and unless they were limited specifically in some way like the statutory cap that used to exist. So what is E18? If you injure one leg, you go down through the list, you get to number 12, and you get 200 weeks or whatever percentage of it you've lost. And if you lose two legs in that accident, then Section E18 replaces Section 12 and eliminates what would be a double recovery. You can't have statutory permanent total for the loss of two legs and have E12 for permanent partial disability of that extremity. But you can have with multiple trauma, as there's plenty of cases that have been cited, permanent loss of the man as a whole for the back and neck injury and a separate burn or cut or laceration or injury to another part from the same accident would be rated under the appropriate part of Section 8E for the specific loss of that part. Or you may have burns to multiple body parts where some of those are recognized for disfigurement and would go under 8C and others might be for the functional impairment and rated for permanent partial disability of the body under 8D. So that happens all the time. The point is not one of these statements about if you get this for this part, you can't get something else for the injury to the same part. That's all they mean. Make your choice on the menu, but those limitations only apply to any one injured part. So if you were to conclude that the injured part of the neck was responsible for the paralysis of three parts and couldn't make any distinction, then I can at least see that there's a possibility of limiting that part of the compensation, in which case you would still reinstate the compensation for the amputation of the right arm, which is clearly a separate trauma. So depending on how you interpret the specific injured part, I can at least understand compensating statutory permanent and total disability and one arm because that is a more clearly separate injury. But as a practical matter, if you have three injured parts, you're really both legs and the left arm, you're still involving damage to nerves and connective tissue in all those places that relate to different acts of functional loss, and I don't really think even as a medical matter that that limit should be there, although it is a different argument than the elimination of the right arm by the appellate court. Basically there's nothing in Section 8018 that says this is all you get once you qualify for this. It just means that's all you get for the particular qualifying lost parts. It doesn't limit in any way what other injured parts would entitle the worker to, and as to the equal protection, I can't even imagine how anybody could find a rational basis for saying to a worker when you walk into the factory or as Jack did, get behind the wheel of that semi and put your whole body on the line for your job and for your employer, that if you become a quadriplegic instead of a paraplegic, two of those losses don't count. There's no rational basis for ignoring such profound disability on top of that which qualifies that worker for the minimum guaranteed benefit of E18 from half of the losses. Any other questions? Thank you very much for your time.